IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JEANNE SMITH,

    Plaintiff,

v.                                                                   Civil Action No. 3:14CV69

WALGREEN CO.,[1]

    Defendant.

## MEMORANDUM OPINION

Before the Court is Defendant Walgreen Co.'s ("Walgreens") Motion for Summary Judgment. (ECF No. 14). Plaintiff Jeanne Smith responded and Walgreens replied. (ECF Nos. 19-20.) Without objection, the Court dispenses with oral argument because the materials before the Court present adequately the facts and legal contentions and argument would not aid the decisional process. Accordingly, this matter is ripe for disposition. The Court exercises jurisdiction pursuant to 28 U.S.C. § 1332.[2] For the following reasons, the Court will GRANT Walgreens's Motion for Summary Judgment.

### I. Factual and Procedural Background

#### A. Undisputed Facts

This action arises from a slip and fall incident occurring at a Walgreens store located on Laburnum Avenue in Richmond, Virginia. On February 14, 2012, Smith and her boyfriend Mickey Walke went to the Walgreens store to pick up photographs. On that day, the weather

---

[1] The Defendant's Answer indicates its correct name is "Walgreen Co." (Answer 1, ECF No. 4.) The Court employs the proper name for the Defendant and directs the Clerk to correct the record to reflect the proper name of the Defendant as "Walgreen Co."

[2] Diversity exists between the parties and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332.

1

was nice and the store contained sufficient lighting. At approximately 10:00 a.m., Smith and Walke entered the Walgreens store. Smith walked into the store ahead of Walke.

According to Smith, "as soon as [she] walked past the mat [at the front entrance to the store], [she] fell." (Def.'s Mem. Supp. Mot. Summ. J. ("Def.'s Mem.") Ex. 2 Smith Dep. ("Smith Dep.") 38:5-7, June 23, 2014, ECF No. 15.) Smith testified she walked between two and four feet into the store and then fell. Walke stated he and Smith were in the store "[m]aybe a minute, at the most" before Smith fell. (Def.'s Mem. Ex. 3 Walke Dep. ("Walke Dep.") 12:23, June 23, 2014, ECF No. 15.) When describing how she fell, Smith stated that her "right leg went over [her] left foot" and that she landed with her left hand down and her "legs crisscrossed." (Smith Dep. 40:6-8; 41:24-25; 42:4.) The fall "[k]nocked the breath of out [her]" and she felt sick. (Smith Dep. 46:13-14.)

Neither Smith nor Walke saw anything on the store's floor before Smith fell. Smith did not know what caused her to fall.

After falling, Smith looked at the floor and saw a "shiny," "clear," "thin" and "oily, wet-like substance" that was not water. (Smith Dep. 37:18, 20; 45:11, 15-16.) Walke saw a "waxy substance, oily substance" on the floor after Smith fell. (Walke Dep. 13:21.) Smith described the substance as covering an area a little bigger than the length of a soda can. Smith touched the substance and testified "[i]t was just a[n] oily substance. I don't know what it was." (Smith Dep. 45:3-9.)

"[I]f [she] had to guess," Smith thought the floor "had like a[n] oily, like it had just been waxed but it hadn't been buffed. I mean it was like a sheet of glass." (Smith Dep. 63:1-2; Smith Dep. Ex. 1 Smith recorded interview ("Smith recorded interview") 2:77-78, Mar. 1, 2012, ECF No. 15.) Walke indicated the substance resembled "floors [that] were maybe waxed, and they

2

weren't completely . . . buffed, or buffed out." (Walke Dep. 14:17-18.) Smith did not know if Walgreens knew about the substance on the floor before she fell. Smith and Walke both testified that the store manager reached down to touch the floor and told them nothing was on the floor. Both also testified the store manager told them the store cleaned the floors the night before her fall.[3]

Store manager Jay Dalton testified that because the Walgreens store remains open twenty four hours, the store employees could clean the store's floor "anywhere between 12:00 and 6:00 a.m." (Def.'s Reply Pl.'s Resp. Def.'s Mot. Summ. J. ("Def.'s Reply") Ex. 3 Dalton Dep. ("Dalton Dep.") 12:10, 14-15, June 23, 2014, ECF No. 20.) Dalton averred that "[n]ormally when the floor is cleaned, there is a solution, kind of like a soap agent, that's in the water. That's when it's mopped." (Dalton Dep. 12:24-13:1.) Dalton stated that "[i]f the store did not need mopp[ing], then they wouldn't have done that." (Dalton Dep. 13:19-20.) Dalton could not recall whether a store employee actually mopped the store's floor the night before or morning of the accident. Dalton averred no "record of whether or not the solution was used" to mop the floors the previous night exists. (Dalton Dep. 13:21-24.)

---

[3] Smith argues in briefing that a disputed fact exists – namely, that, at the time of the accident, the store manager disputed the existence of an oily, waxy substance on the floor while Smith and Walke testified that the floor had an oily substance on it that caused the plaintiff to fall. (*See* Pl.'s Resp. Def.'s Mot. Summ. J. ("Pl.'s Resp.") 2-3, ECF No. 19 ("a dispute exists as to whether there was an oily or waxy substance on the floor that caused the plaintiff to fall.").) No material dispute exists. Viewing the evidence in the light most favorable to Smith, Smith has presented sufficient evidence to show that a substance was present on the floor.
Although neither Smith nor Walke saw the substance before she fell, both saw it after the fall. Smith testified the substance felt oily and appeared slightly larger than the length of a soda can. From this evidence, the Court presumes, for summary judgment purposes, that a substance was present on the floor at the time of Smith's accident. See *Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 452-55 (4th Cir. 2004); *Villines v. Walgreen Co.*, No. 3:10cv674, 2011 WL 1752113, at *1 n.4 (E.D. Va. May 6, 2011); *Meyer v. Boddie-Noell Enters., Inc.*, No. 3:10CV386, 2011 WL 201524, at *1 n.3, *3-8 (E.D. Va. Jan. 5, 2011), *accepted and adopted*, 2011 WL 221298, at *1 (E.D. Va. Jan. 21, 2011).

3

### B. Procedural Background

After her fall, Smith filed a Complaint in the Circuit Court for the City of Richmond against Walgreens, seeking $500,000 in compensatory damages. Smith asserts that Walgreens negligently failed to maintain the premises in a safe manner. On February 3, 2014, Walgreens filed a Notice of Removal in this Court. On February 7, 2014, Walgreens filed an Answer and denied any negligence.

Walgreens now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56, arguing that Smith "has admitted no evidence to establish that Walgreens had actual or constructive notice of the alleged substance on the floor." (Def.'s Mem. 1.) In response, Smith contends that a "genuine dispute as to material facts exists," specifically, whether "there was an oily or waxy substance on the floor that caused the plaintiff to fall," thus precluding summary judgment. (Pl.'s Resp. 2-3.)

## II. Standard of Review

Summary judgment under Rule 56 is appropriate only when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *Anderson*, 477 U.S. at 248-50. Once a party has properly filed evidence supporting the motion for summary judgment, the nonmoving party may not rest upon mere allegations in the pleadings, but instead must set forth specific facts illustrating genuine issues for trial. *Celotex Corp.*, 477 U.S. at 322-24. These facts must be presented in the form of exhibits and sworn affidavits. Fed. R. Civ. P. 56(c).

A court views the evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. Whether an inference is

reasonable must be considered in conjunction with competing inferences to the contrary. *Sylvia Dev. Corp. v. Calvert Cnty.*, 48 F.3d 810, 818 (4th Cir. 1995) (citation omitted). Nonetheless, the nonmoving "party is entitled 'to have the credibility of his evidence as forecast assumed.'" *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc) (quoting *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)). Ultimately, the court must adhere to the affirmative obligation to bar factually unsupportable claims from proceeding to trial. *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (citing *Celotex Corp.*, 477 U.S. at 323-24).

### III. Analysis

A court exercising diversity jurisdiction applies the substantive law of the forum state. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-79 (1938); *Cole v. Food Lion, L.L.C.*, 370 F. Supp. 2d 434, 436 (E.D. Va. 2005). In Virginia, to establish a prima facie negligence claim, a plaintiff bears the burden of proving "the existence of a legal duty, a breach of the duty, and proximate causation resulting in damage." *Atrium Unit Owners Ass'n v. King*, 585 S.E.2d 545, 548 (Va. 2003); *see also Trimyer v. Norfolk Tallow Co.*, 66 S.E.2d 441, 443 (Va. 1951). As the Supreme Court of Virginia has articulated, "[t]he rules applicable to slip-and-fall cases are well settled." *Winn-Dixie Stores, Inc. v. Parker*, 396 S.E.2d 649, 650 (Va. 1990).

> "The [store owner] owed the [customer] the duty to exercise ordinary care toward her as its invitee upon its premises. In carrying out this duty it was required to have the premises in a reasonably safe condition for her visit; to remove, within a reasonable time, foreign objects from its floors which it may have placed there or which it knew, or should have known, that other persons had placed there; to warn the [customer] of the unsafe condition if it was unknown to her, but was, or should have been known, to the [store owner]."

*Id.* (quoting *Colonial Stores v. Pulley*, 125 S.E.2d 188, 190 (Va. 1962)) (alterations in original).

5

A prima facie case of premises liability requires first that the plaintiff prove the existence of an unsafe or dangerous condition. *Hodge*, 360 F.3d at 451. Next, "a plaintiff must, in order to establish a defendant's negligence, prove '*why* and *how* the incident happened.'" *Id.* (quoting *Town of West Point v. Evans*, 299 S.E.2d 349, 351 (Va. 1983)). "'[I]f the cause of the event is left to conjecture, guess, or random judgment, the plaintiff cannot recover.'" *Id.* (quoting *Evans*, 299 S.E.2d at 351). Where a plaintiff lacks evidence as to why an injury occurred, he or she may present evidence of the defendant's actual or constructive notice. *Id.* at 452.

### A. Actual Notice

Smith fails to establish that Walgreens had actual notice of the unsafe condition that resulted in her fall. The record before the Court entirely lacks any evidence showing Walgreens's actual notice of the oily, waxy substance on the floor prior to Smith's fall. Smith testified she did not know whether Walgreens knew about the substance on the floor before she fell. Neither Smith nor Walke saw the substance before Smith fell. Smith failed to produce any evidence that Walgreens had actual notice of the unsafe condition. Because this record cannot support a finding of actual notice, Smith must establish that Walgreens had constructive notice of the unsafe condition resulting in her injuries. *See Pulley*, 125 S.E.2d at 190.

### B. Constructive Notice

Even viewing the evidence most favorably to Smith, Smith fails to establish that Walgreens had constructive notice of the unsafe condition resulting in Smith's injuries. To prove constructive notice, a plaintiff must introduce "evidence that the defect was noticeable and had existed for a sufficient length of time to charge its possessor with notice of its defective

6

condition." *Grim v. Rahe, Inc.*, 434 S.E.2d 888, 890 (Va. 1993). Thus, a prima facie case requires evidence of when an unsafe condition developed.[4] *Id.*

Here, Smith has failed to point to any evidence that would give rise to a reasonable inference as to how the oily, waxy substance got on the floor and how long it remained on the floor. Virginia law requires that she do so to carry her burden of proving that Walgreens was on constructive notice. *Id.*; *Parker*, 396 S.E.2d at 651; *Pulley*, 125 S.E.2d at 190 (stating that it was "incumbent upon the plaintiff to prove that the defendant knew [the dangerous condition] was there, or, to show that the [item] had been there long enough that the defendant ought to have known of its presence"). "Hence, if the evidence fails to show *when* a defect occurred on the premises, the plaintiff has not made out a *prima facie* case." *Grim*, 434 S.E.2d at 890 (citing

---

[4] Virginia law distinguishes between cases where a plaintiff alleges negligence from a defendant's "affirmative conduct," and cases where a plaintiff alleges negligence from a defendant's "passive conduct." *See Ashby v. Faison & Assocs., Inc.*, 440 S.E.2d 603, 605 (Va. 1994). Allegations of "affirmative conduct" involve cases in which a defendant was the "genesis" of the dangerous condition. *Goehler v. Wal-Mart Stores, Inc.*, No. 99-2057, 2000 WL 1161700, at *2 (4th Cir. Aug. 17, 2000). In "affirmative conduct" cases, notice is found where "'an ordinarily prudent person, given the facts and circumstances [the defendant] knew or should have known, could have foreseen the risk of danger resulting from such circumstances.'" *Id.* (quoting *Memco Stores, Inc. v. Yeatman*, 348 S.E.2d 228, 231 (Va.1986)). In addition, "the foreseeability of the danger . . . [is] the relevant question for [a] jury to consider in determining whether [a] defendant [has] been negligent." *O'Brien v. Everfast, Inc.*, 491 S.E.2d 712, 715 (Va. 1997). "An employee's voluntary movement of a plant, causing a 'slimy' leaf to fall to the floor, is an example of 'affirmative' conduct. Allowing water to accumulate in a lobby, by contrast, is an example of 'passive' conduct." *Panzetta v. Food Lion, LLC*, No. 3:11cv174, 2011 WL 4073299, at *2 (E.D. Va. Sept. 13, 2011) (quoting *Ashby*, 440 S.E.2d at 605).
In this case, Smith alleges that Walgreens's passive conduct, negligently failing to properly maintain the premises, caused the unsafe condition. Because Smith merely speculates that Walgreens created the unsafe condition when it cleaned the store's floors the night before Smith fell, and because the record lacks any evidence that Walgreens actually mopped the floor or mopped the floor in such a way that created the unsafe condition, this Court analyzes whether Walgreens had constructive notice of the unsafe condition pursuant to "passive conduct" analysis, rather than "affirmative conduct." *See Jefferson v. Regal Cinemas, Inc.*, No. 3:10cv166, 2010 WL 3894127, at *5-6 (E.D. Va. Oct. 4, 2010) (distinguishing passive conduct and affirmative conduct analysis.

*Parker*, 396 S.E.2d at 651). Likewise, if the evidence fails to show that the defect was noticeable, the plaintiff has not made out a prima facie case. *Id.*

This record is bereft of any evidence as to how the waxy, oily substance got on the floor, when it got on the floor, or how long it remained on the floor prior to Smith's fall.

> "There is no evidence in this case that [the defendant] knew of the presence of the [item] on the floor, nor is there any showing of the length of time it may have been there. It is just as logical to assume that it was placed on the floor an instant before [the plaintiff] struck it as it is to infer that it had been there long enough that [the defendant] should, in the exercise of reasonable care, have known about it."

*Parker*, 396 S.E.2d at 651 (quoting *Pulley*, 125 S.E.2d at 190). Absent evidence of when the unsafe condition was created, Smith cannot establish that a sufficient amount of time passed to provide Walgreens with constructive notice of the condition, which is a required component of her prima facie case. *See Hodge*, 360 F.3d at 454.

Smith cannot satisfy her burden on summary judgment by speculating that the substance remained on the floor from the prior night's cleaning. *Cox v. Cnty. of Prince William*, 249 F.3d 295, 299 (4th Cir. 2001) ("Mere speculation by the non-moving party cannot create a genuine issue of material fact."); *Great Atl. & Pac. Tea Co. v. Berry*, 128 S.E.2d 311, 314 (Va. 1962) ("The plaintiff cannot be said to have made out a case for the jury when it is necessary for the jury to speculate or guess in order to allow her a recovery."). Smith and Walke speculate the oily, waxy substance remained on the floor as a result of Walgreens cleaning the floors the night before her fall. (Smith Dep. 63:1-2; Smith recorded interview 2:77-78; Walke Dep. 14:17-18.)

However, neither Smith nor Walke saw the substance before Smith fell. *See Ashby*, 440 S.E.2d at 605 (noting that no one, not even plaintiff, knew of the dangerous condition beforehand, and thus, the plaintiff failed to establish actual or constructive knowledge). Neither knew how long the substance was on the floor, when it got on the floor, or how it got on the

8

floor. Dalton, the store manager, could not recall whether the floors were mopped the night or morning before the accident. Finally, no records identifying the solution used to mop the floor exist.

This record lacks any evidence, much less admissible evidence, as to whether the floors were actually cleaned, when they were cleaned, who cleaned them, or how they were cleaned prior to Smith's February 14, 2012 visit. In the absence of any evidence of an actual cleaning, speculation that the substance remained on the floor from a prior cleaning fails to provide sufficient evidence to satisfy Smith's burden on summary judgment to set forth specific facts in exhibits and sworn affidavits.[5] *See Celotex Corp.*, 477 U.S. at 322-24; Fed. R. Civ. P. 56(c). Virginia law and the Federal Rules require more evidence to show constructive notice. *See Jefferson*, 2010 WL 3894127, at *5 (no evidence of actual cleaning that did or did not happen on the day of the accident).

Even viewing the evidence favorably to Smith, the Court cannot infer, on this record, that the oily, waxy substance remained on the floor from a prior cleaning. The Court cannot reasonably infer how long the substance was there before Smith encountered it. It is equally plausible and logical, on this record, that the oily, waxy substance appeared on the floor just before Smith fell as it is to infer that it was left from a prior cleaning and existed long enough that Walgreens should have known about it. *See Hodge*, 360 F.3d at 454-55 (citing *Parker*, 396 S.E.2d at 651; quoting *Grim*, 434 S.E.2d at 890 ("there is absolutely no evidence as to when the [unsafe condition occurred], how it [occurred], no evidence that the owner knew about it. It

---

[5] Smith did not submit any affidavits or exhibits to her opposition to Walgreens's motion, which buttresses this Court's finding that Smith failed to carry her burden to overcome summary judgment. In the absence of any admissible evidence, this Court cannot make the finding or inference "that the defendant left the oily or waxy substance which caused the Plaintiff to fall on the floor when the cleaned it." (Pl.'s Resp. 3.) On this record, it is just a reasonable that the substance appeared on the floor just prior to Smith's fall.

9

Case 3:14-cv-00069-MHL Document 26 Filed 08/07/14 Page 10 of 10 PageID# 278

could have [occurred] five minutes [before the injury] or sooner.") (alterations in original)); *Parker*, 396 S.E.2d at 651 (quoting *Pulley*, 125 S.E.2d at 190) (same). Absent sufficient circumstantial evidence of when the unsafe condition was created, Smith cannot establish that a sufficient amount of time passed to provide Walgreens with constructive notice of the condition, which is a required component of her prima facie negligence case. *See Hodge*, 360 F.3d at 454.

## IV. Conclusion

For the foregoing reasons, the Court will GRANT Walgreens's Motion for Summary Judgment. (ECF No. 14.)

An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States District Judge

Richmond, Virginia
Date: 8-7-14

10